1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF CALIFORNIA

### FRESNO DIVISION

| | |
|---|---|
| **MARK DORSEY**, CDCR #H-38301, | CASE NO. 08cv0919-JAH(JMA) |
| | |
| | **ORDER GRANTING MOTION TO DISMISS THIRD AMENDED COMPLAINT** |
| Plaintiff, | |
| vs. | (Dkt No. 24) |
| | |
| **JAMES TILTON; SCOTT KERNAN; FELIX IGBINOSA; JAMES YATES,** | |
| | |
| Defendants. | |

On March 4, 2009, Plaintiff Mark Dorsey ("Dorsey"), a state prisoner incarcerated at Pleasant Valley State Prison ("PVSP") in Coalinga, California, proceeding *pro se* and *in forma pauperis*, filed a Third Amended Complaint ("TAC") in this 42 U.S.C. § 1983 civil rights action.  He seeks injunctive relief and damages for alleged violations of his Eighth Amendment right to medical treatment for his Valley Fever condition in the form of a particular medication and transfer to a "safe, sanitary environment."  (TAC ¶¶ 14-17.)  He names as defendants James Tilton ("Tilton"), the California Department of Corrections & Rehabilitation ("CDCR") Secretary, Scott Kernan ("Kernan"), the CDCR Director, James Yates ("Yates"), the PVSP Warden, and Felix Igbinosa ("Igbinosa"), the Chief Medical

1   Officer (collectively "Defendants").[1]  By Order entered November 25, 2008, this action was reassigned

2   from the bench of the Eastern District of California to the undersigned district judge, John A. Houston,

3   Southern District of California.  (Dkt No. 9.)

4        This matter is before the Court on Defendants' Motion To Dismiss the TAC ("Motion") for

5   failure to exhaust administrative remedies and for failure to state a claim.  (Dkt No. 24.)  Dorsey was

6   notified of his November 9, 2009 Opposition deadline in the October 8, 2009 Order providing him notice

7   of the Motion and of his obligation to oppose the Motion, if he so chose, with whatever arguments and

8   evidence he may have to show he actually exhausted his administrative remedies prior to filing suit.

9   (Dkt No. 25.)  He has filed no Opposition.  That Order also informed the parties the matter would be

10  taken under submission as of November 23, 2009 and decided on the papers, without oral argument.  For

11  the reasons discussed below, the Motion is **GRANTED**.

12  I.      BACKGROUND

13       Dorsey alleges Defendants were aware that he has required pain medication for his Valley Fever

14  condition since 2004.  (TAC ¶ 15.)  He alleges that since 2007, they "have repeatedly delayed

15  performing medical tests and providing medical treatment" in the form, *inter alia*, of the medication

16  Fluconazole and transfer out of "the endemic Prison area."[2]  (TAC ¶¶ 16-17.)  He filed his Complaint

17  on June 30, 2008, claiming that conduct violated his rights under the Eighth Amendment to the United

18  States Constitution.  His *in forma pauperis* application was granted on July 3, 2008.  (Dkt No. 4.)  He

19  filed a First Amended Complaint on September 19, 2008.  (Dkt No. 8.)  By Order entered December 23,

20

21       [1]  Dorsey includes separate allegations in the TAC against various nurses and doctors identified by name
     or as "Does," denominating them as "witnesses" acting "under color of state law" who were allegedly responsible

22   in some capacity for inmate care at the prison.  (TAC ¶¶ 7-8, 10-13.)  However, those persons are not identified
     as named defendants, and Dorsey attributes no specific causal connection to any of them as would be required to

23   state a 42 U.S.C. § 1983 claim.

24       [2]  Dorsey also alleges he has been subjected to "hostility and abuse in apparent retaliation for plaintiff's
     efforts to secure proper medical supplies, medication, and transfer treatment" in the form of purported "false

25   disciplinary writeups on plaintiff, placing him in administrative segregation without justification and for irregularly
     long periods of time, withholding medical supplies and medications, and denying medical transfer to avoid

26   reinfection and more serious condition."  TAC ¶ 18.  In order to state a cognizable retaliation claim, the prisoner
     must assert the defendants took action against him because he asserted his constitutional rights, and defendants'

27   allegedly retaliatory actions did not advance a legitimate correctional goal.  *See, e.g.*, Rhodes v. Robinson, 408 F.3d
     559, 567-68 (9th Cir. 2005) (identifying five elements a prisoner must satisfy in seeking relief for alleged

28   retaliatory conduct  predicted on the prisoner's exercise of a constitutional right).  The TAC links no named
     defendant to the allegedly adverse writeups or discipline.

1    2008, the Court *sua sponte* dismissed the First Amended Complaint pursuant to 28 U.S.C. §§ 1915(e)(2)

2    and 1915(b) for failure to state a claim, with leave to amend.  Dorsey had failed to allege any act or

3    omission individually attributable to any person and failed to allege facts from which the Court could

4    find the essential element of deliberate indifference on the part of any of the named Defendants, as is

5    required to state an Eighth Amendment claim.  (Dkt No. 11.)

6        Dorsey filed his Second Amended Complaint on January 20, 2009.  (Dkt No. 12.)  By Order

7    entered February 10, 2009, the Court *sua sponte* dismissed that pleading, again for failure to state a claim

8    because he failed to identify with specificity what any of the named defendants did or did not do with

9    respect to his requests for medical treatment or transfer to another prison and because he failed to

10    adequately plead the deliberate indifference element of an Eighth Amendment claim.  (Dkt No. 13.)  He

11    was granted leave to amend a third and final time.

12        Dorsey's TAC, filed March 4, 2009, again attempts to state a claim for deliberate indifference

13    to a serious medial need.  (Dkt No. 14.)  The TAC survived 28 U.S.C. §§ 1915(e)(2) and 1915A(b) initial

14    screening (Dkt No. 15) and is the operative pleading here.  Defendants have responded with a Motion

15    To Dismiss for failure to exhaust administrative remedies, failure to state a claim pursuant to

16    Fed.R.Civ.P. ("Rule") 12(b) and 12(b)(6), and unavailability of the injunctive relief Dorsey seeks from

17    these Defendants.[3]  They also assert a qualified immunity defense.  (Dkt No. 24.)

18

19       [3] Dorsey seeks injunctive relief in the form of an ordered transfer to a different institution and "treatment according to proof." (TAC p. 8.) While the Eleventh Amendment forecloses damages suits against a State official in his or her official capacity, State officials sued in their official capacity for *injunctive* relief are persons for

20    Section 1983 purposes because "official-capacity actions for prospective relief are not treated as an action against the State." Will v. Mich. Dep't of State Police, 491 U.S. 58, 71, n.10 (1989), *quoting* Kentucky v. Graham, 473

21    U.S. 159, 167, n.14 (1985).  "[A] suit for prospective injunctive relief provides a narrow, but well-established, exception to Eleventh Amendment immunity." Doe v. Lawrence Livermore Nat. Laboratory, 131 F.3d 836, 839

22    (9th Cir. 1997).  Defendants argue they do not have the power to afford Dorsey the relief he seeks.  They rely on Plata v. Davis, 329 F.3d 1101, 1105, n.3 (9th Cir. 2003) for the proposition that the policies and procedures governing

23    the CDCR's medical delivery system are established and controlled by the stipulated class action relief associated with that case and to be implemented system-wide through a court-appointed Receiver, warranting dismissal of

24    Kernan, Tilton, and Igbinosa. Mot. 8:20-9:10.  However, the separate constitutional duty of prison officials to respond to the serious medical needs of those persons in their custody is clearly established.  *See* Jones, 781 F.2d

25    at 771; Estelle, 429 U.S. at 106 (stating Eighth Amendment standard).  The Court rejects the suggestion particular instances of constitutional violations fall within the scope of an overarching scheme to remediate prison conditions

26    so as to exonerate denial of injunctive relief when warranted.  Nevertheless, absent a violation of a federal right to support the prospective injunctive relief sought, no "clear and plain case" exists for the granting of such relief.

27    Rizzo v. Goode, 423 U.S. 362, 378 (1976) ("When a plaintiff seeks to enjoin the activity of a government agency, . . . his case must contend with the well-established rule that the Government has traditionally been granted the

28    widest latitude in the dispatch of its own affairs") (internal quotations and citations omitted).  Moreover, a party

1    II.     DISCUSSION

2           A.      **Failure To Exhaust Administrative Remedies**

3           The Prison Litigation Reform Act of 1995 ("PLRA") requires procedural and substantive

4    exhaustion of administrative remedies before an inmate can bring a court action "with respect to prison

5    conditions under [42 U.S.C. § 1983], or any Federal law . . . ."  42 U.S.C. § 1997e(a).  Compliance with

6    prison grievance procedures is all the PLRA requires:  the prison's requirements, not the PLRA itself,

7    define the boundaries of proper exhaustion.  Jones v. Bock, 549 U.S. 199, 218 (2007).

8           California provides its inmates and parolees the right to appeal administratively the alleged

9    misconduct of correctional officers and "any departmental decision, action, condition or policy perceived

10   by those individuals as adversely affecting their welfare."  CAL. CODE REGS. tit. 15, § 3084.1(a), (e).  In

11   order to exhaust administrative remedies within this system, a prisoner normally must proceed through

12   four levels:  (1) initiation of informal resolution through submission of a CDC form describing the

13   problem and the action requested; (2) first level formal written appeal to the prison's appeals coordinator;

14   (3) second level formal appeal to the institution's warden or designee; and (4) third level formal appeal

15   to the CDCR Director ("Director's Level").  Id. § 3084.5; see Woodford v. Ngo, 548 U.S. 81, 90-91, 86

16   (2006) (California prisoners are required to use the process established by CAL. CODE REGS., tit. 15 §§

17   3084.1, 3084.2-3084.6 in order to satisfy 42 U.S.C. § 1997e(a)); Porter v. Nussle, 534 U.S. 516, 532

18   (2002) (the exhaustion requirement is mandatory and applies to all prisoner suits relating to prison life

19   that do not implicate the duration of the prisoner's sentence).

20          All available administrative remedies must be exhausted prior to bringing suit, regardless of the

21   relief sought by the prisoner.  Booth v. Churner, 532 U.S. 731, 741 (2001) (even when the prisoner seeks

22   relief not available in grievance proceedings, such as money damages, exhaustion of administrative

23   remedies is a prerequisite to seeking judicial relief); see Brown v. Valoff, 422 F.3d 926, 936 (9th Cir.

24   2005).  An incomplete or procedurally defective administrative appeal does not satisfy the exhaustion

25   requirement.  Woodford, 548 U.S. at 83-84; see CAL. CODE REGS § 3084.1(a).

26   ─────────────────────

27   moving for injunctive relief, at a minimum, must establish a serious question of liability.  Kootenai Tribe of Idaho
     v. Veneman, 313 F.3d 1094, 1124 (9th Cir. 2002).  Dorsey satisfies none of these predicates to state a claim for
28   injunctive relief.

1    Failure to exhaust administrative remedies is an affirmative defense properly raised in a

2    Rule 12(b) motion. Jones, 549 U.S. at 216.  Defendants bear the burden of establishing non-exhaustion.

3    Wyatt v. Terhune, 315 F.3d 1108, 1119-1120 (9th Cir. 2003).   "In deciding a motion to dismiss for a

4    failure to exhaust nonjudicial remedies, the court may look beyond the pleadings and decide disputed

5    issues of fact" on the exhaustion issue.   Id.; see Brown, 422 F.3d at 939 n.13, 937 (9th Cir. 2005)

6    (relevant evidence that defendants can use to disprove exhaustion includes, among other things, statutes,

7    regulations, and "documentary or testimonial evidence from prison officials who administer the review

8    process") (citation omitted).

9    In support of their Motion, Defendants provide three Declarations from CDCR employees

10   familiar with the institutional administrative appeals processes and record-keeping system.[4]   Each

11   declarant describes the levels of complaint and appeal available to prisoners who contend an action or

12   omission by individuals acting under color of state law has adversely effected them.  Each declares that

13   after a thorough search of the institution's records, none found any evidence Dorsey had filed *any*

14   administrative appeal.

15   Dorsey vaguely alleges he "has filed numerous inmate appeals through the prison grievance

16   system relative to defendants' " challenged conduct.[5]  (TAC ¶ 19.)  He contends "[o]ne such appeal was

17   filed [in] 2007, wherein plaintiff asked for 'proper medical attention and supplies' for his medical

---

18   [4]   The Declarations were provided by:  G. Duran, an Appeals Coordinator at PVSP; N. Grannis, Chief of

19   Inmate Appeals Branch in Sacramento, California; and J. Walker, a Health Program Manager at the Office of Third
     Level Appeals-Health Care ("the third and final formal level of administrative review of medical appeals filed by

20   inmates and parolees of the State of California" (Walker Decl. ¶ 4)).

21   [5]   Amended complaints supersede earlier versions.  Any prior pleading is treated as non-existent, and
     allegations not reiterated in the superseding pleading are deemed waived.  Ferdik v. Bonzelet, 963 F.2d 1258, 1262

22   (9th Cir. 1992).  The Court has verified no filed version of Dorsey's complaint substantiates through exhibits his
     representation he filed formal grievances prior to filing suit, let alone through the Director's Level of review.  He

23   initially pled in his June 30, 2008 Complaint he had "filed a grievance in 2006 and have filed one every month
     since that date, but have not received any response."  (Dkt No. 1, p. 2.)  His original Complaint attached only his

24   Affidavit signed June 25, 2008, attesting:  he was transferred to PVSP in about January 2006; prior to transfer, he
     was not given notice by the CDCR that Valley Fever could be contracted there; he contracted Valley Fever while

25   there, "an incurable life-long disease;" and the disease has caused him "to suffer extreme pain in my joints and
     throughout my body."  (Dkt No. 1-2.)  He repeated those contentions in his First Amended Complaint (Dkt No.

26   8, p. 2), but attached no exhibits.  As attachments to his Second Amended Complaint, he provided the job
     descriptions for the positions held by the named defendants, documentation of reported cases of Valley Fever for

27   Fresno County in the form of multiple media accounts, and various published descriptions of the disease and its
     effects. (Dkt No. 12.)  He resubmits as attachments to the TAC certain of those publications, but no evidence of

28   administrative grievances.

- 5 -                                                      08cv0919

1   condition," but "[t]his appeal has never been responded to."[6] (<u>Id.</u>)   He recites a "copy of the appeal was

2   attached to plaintiff's first amended complaint . . . [and] Plaintiff has thus exhausted his administrative

3   remedies for the claims herein."   (<u>Id.</u>)   However, none of the four scanned versions of his pleading

4   contains an exhibit to substantiate that representation.   (*See* fn. 4, above.)   He does not specify in his

5   pleadings what level of appeal he claims to have pursued to obtain pain medication purportedly denied

6   him.   He does not allude to having ever sought administratively a medical transfer from PVSP.   He

7   identifies with specificity no particular grievance filing he pursued through the Director's Level of review

8   on either component of his Eighth Amendment claim.   Unless he pursued relief through the Director's

9   Level of the administrative appeals process, not only are his claims unexhausted, but also his contentions

10  CDCR Director Kernan and CDCR Secretary Tilton knew of his situation and intentionally disregarded

11  his serious medical needs are mere speculative conclusions unsupported by any factual allegation.

12  Dorsey has not attempted to rebut Defendants' evidence, essentially conceding his failure to exhaust

13  administrative remedies prior to filing suit.   Accordingly, the Court **GRANTS** Defendants'  Motion on

14  that basis.

15         The appropriate remedy for a failure to exhaust administrative remedies is dismissal  without

16  prejudice.   <u>Wyatt</u>, 315 F.3d at 1119.   Nevertheless, the PLRA exhaustion requirement does not affect

17  subject matter jurisdiction to review a prisoner's civil rights claims.   When the court concludes a

18  complaint fails to state a claim, a claim is frivolous, or is brought against defendants who are immune

19  from suit for damages, the court may dismiss the action without first requiring exhaustion.   42 U.S.C.

20  § 1997e(c)(2).   Accordingly, the court can reach the alleged pleading defects asserted in a Rule 12(b)(6)

21  motion.   <u>Jones</u>, 549 U.S. at 216; *see also* <u>Wyatt</u>, 315 F.3d at 1117 n,9, 1119.   Inasmuch as the Court

22  finds granting further leave to amend his Eighth Amendment claim to state a claim upon which relief

23  can be granted would be futile, considering his several failed attempts to do so, it elects to address the

24  Rule 12(b)(6) merits in disposing of this action.   For the reasons discussed below, the Court finds even

25  had Dorsey exhausted his administrative remedies before pursuing judicial relief, he fails to state a claim,

26  and therefore the Motion is also **GRANTED** on that basis.

27  _____

28         [6]  The United States Supreme Court has cautioned against reading futility or other exceptions into the
statutory exhaustion requirement of the PLRA, 42 U.S.C. § 1997e(a).   <u>Booth</u>, 532 U.S. at 741 n.6.

1

**B.**     <u>Civil Rights Violations Pleading Standards</u>

2

        To state a *prima facie* case for relief under the Civil Rights Act, 42 U.S.C. § 1983, a plaintiff

3

must allege that "an individual acting under the color of state law deprived him of a right, privilege, or

4

immunity protected by the United States Constitution or federal law." <u>Levine v. City of Alameda</u>, 525

5

F.3d 903, 905 (9th Cir. 2008); <u>Johnson v. Duffy</u>, 588 F.2d 740, 743 (9th Cir. 1979) ("A person 'subjects'

6

another to the deprivation of a constitutional right, within the meaning of section 1983, if he does an

7

affirmative act, participates in another's affirmative acts or omits to perform an act which he is legally

8

required to do that causes the deprivation of which complaint is made"); *see* <u>Paine v. City of Lompoc</u>,

9

265 F.3d 975, 984 (9th Cir. 2001) (a necessary element of the Section 1983 claim is that the "particular

10

defendant was a participant in the incidents that could give rise to liability").

11

        There is no *respondeat superior* liability under 42 U.S.C. § 1983. <u>Palmer v. Sanderson</u>, 9 F.3d

12

1433, 1437-38 (9th Cir. 1993); <u>Monell v. Dep't of Soc. Servs.</u>, 436 U.S. 658, 691 (1978) (the supervisor

13

of someone who allegedly violated a plaintiff's constitutional rights is not made liable for the violation

14

by virtue of that role).  Rather, a supervisor is liable in his or her individual capacity for constitutional

15

violations of a subordinate only "if the supervisor participated in or directed the violations, or knew of

16

the violations and failed to act to prevent them." <u>Taylor v. List</u>, 880 F.2d 1040, 1045 (9th Cir. 1989);

17

<u>Ashcroft v. Iqbal</u>, 556 U.S. --, 129 S.Ct 1937, 1948 (2009) ("Because vicarious liability is inapplicable

18

to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's

19

own individual actions, has violated the Constitution").  Consequently, absent factual allegations of

20

direct participation by the named state actor, no cognizable constitutional claim is stated.  <u>Taylor</u>, 880

21

F.2d at 1045.

22

        Dorsey sues each named Defendant in his "official and individual capacities."  Prison officials,

23

when acting in their official capacity, are acting under color of state law.  *See* <u>Leer v. Murphy</u>, 844 F.2d

24

628, 633 (9th Cir. 1988).  However, when official-capacity suits are simply an alternative way of

25

pleading an action for damages against the entity of which the defendant is an officer, the Eleventh

26

Amendment bars the suit. *See* <u>Hafer v. Melo</u>, 502 U.S. 21, 25 (1991); <u>Doe v. Lawrence Livermore Nat'l</u>

27

<u>Lab.</u>, 131 F.3d 836, 839 (9th Cir. 1997) (state officials sued in their official capacity for damages are not

28

considered "a person" for Section 1983 purposes).  Nevertheless, the Eleventh Amendment "only

1   prohibits damages actions against the 'official's office.' " Stivers v. Pierce, 71 F.3d 732, 749 (9th Cir.

2   1995).  Policy-makers on matters implicated by a prisoner's claims can be found liable in their official

3   capacities if a "policy or custom" or a one-time decision by a governmentally authorized decision-maker

4   played a part in the violation of federal law.  A cognizable official-capacity suit requires that the plaintiff

5   demonstrate a policy, custom, or decision was the moving force behind the constitutional violation.  See

6   Hafer, 502 U.S. at 25; Kentucky v. Graham, 473 U.S. 159, 166 (1985).

7       Similarly, the Eleventh Amendment does not bar suits seeking damages against state officials

8   in their personal capacities.  Graham, 473 U.S. at 165 ("Personal-capacity suits seek to impose personal

9   liability upon a government official for actions [the official] takes under color of state law"); see Hafer,

10  502 U.S. at 30; see also Ashker v. California Dep't of Corrections, 112 F.3d 392, 394-95 (9th Cir. 1997).

11  "[A] supervising official may be liable in his individual capacity if he 'set in motion a series of acts by

12  others, or knowingly refused to terminate a series of acts by others, which he knew or reasonably should

13  have known, would cause others to inflict constitutional injury.' " Beck v. City of Upland, 527 F.3d 853,

14  871 (9th Cir. 2008), quoting Larez v. City of Los Angeles, 946 F.2d 630, 646 (9th Cir. 1991).

15      **C.      Standards Of Review For Failure To State A Claim**

16      A motion to dismiss for failure to state a claim under Rule 12(b)(6) "tests the legal sufficiency

17  of a claim," focusing on the "sufficiency" of a claim statement rather than on the claim's substantive

18  merits.  Navarro v. Block, 250 F.3d 729, 732 (9th Cir.  2001).  Therefore, courts normally "look only

19  at the face of the complaint to decide" the motion.  Van Buskirk v. Cable News Network, Inc., 284 F.3d

20  977, 980 (9th Cir. 2002).  A Rule 12(b)(6) dismissal may be based on either a "lack of a cognizable legal

21  theory" or "the absence of sufficient facts alleged under a cognizable legal theory." Balistreri v. Pacifica

22  Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990).

23      "While legal conclusions can provide the framework of a complaint, they must be supported by

24  factual allegations." Iqbal, 129 S.Ct. at 1950.  In reviewing a complaint for Rule 12(b)(6) dismissal

25  purposes, courts accept allegations of material fact as true and construe them in the light most favorable

26  to the nonmoving party.  Cahill v. Liberty Mutual Ins. Co., 80 F.3d 336, 337-38 (9th Cir. 1996).  Factual

27  allegations asserted by pro se petitioners, "however inartfully pleaded," are held "to less stringent

28  standards than formal pleadings drafted by lawyers. Haines v. Kerner, 404 U.S. 519-20 (1972); Karim-

Panahi v. Los Angeles Police Dept., 839 F.2d 621, 623 (9th Cir. 1988) ("In civil rights cases where a plaintiff appears *pro se,* the court must construe the pleadings liberally and must afford plaintiff the benefit of any doubt").  Nevertheless, while "the pleading standard Rule 8 announces does not require 'detailed factual allegations,' . . . it demands more than an unadorned, the defendant-unlawfully-harmed-me accusation." Iqbal, 129 S.Ct. at 1949, *quoting* Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (in deciding a motion to dismiss, the court is "not bound to accept as true a legal conclusion couched as a factual allegation"); *see* Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir.) (the court need not accept as true conclusory allegations, "unwarranted deductions," or "unreasonable inferences"), *amended on other grounds*, 275 F.3d 1187 (9th Cir. 2001).

Thus, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then decide whether they plausibly give rise to an entitlement to relief." Iqbal, 129 S.Ct. at 1250. A Rule 12(b)(6)dismissal is properly granted if a plaintiff's complaint does not contain "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 129 S.Ct. at 1949 (2009), *citing* Twombly, 550 U.S. at 570.  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that defendant has acted unlawfully." Id.  Pleading facts that are "merely consistent with" a defendant's liability "stops short of the line between possibility and plausibility of 'entitlement to relief.' " Id., *quoting* Twombly, 550 U.S. at 557.  When a plaintiff has not "nudged [his] claims across the line from conceivable to plausible, [his] complaint must be dismissed." Twombly, 550 U.S. at 570.  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 129 S.Ct. at 1949 ("A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do' ") *quoting* Twombly, 550 U.S. at 555, 557 (a complaint is insufficient if it tenders "naked assertions" devoid of "further factual enhancement").

The Court may not itself supply missing elements in a deficient claim statement.  In spite of the deference courts accord to a plaintiff's factual allegations, it is improper for the court to assume that "the [plaintiff] can prove facts which [he or she] has not alleged." Associated General Contractors of

California, Inc. v. California State Council of Carpenters, 459 U.S. 519, 526 (1983).  Nor must the court "accept as true allegations that contradict matters properly subject to judicial notice or by exhibit." Sprewell, 266 F.3d at 988 (citation omitted); *see also* Ileto v. Glock Inc., 349 F.3d 1191, 1200 (9th Cir. 2003) (court need not accept as true unreasonable inferences or conclusions of law cast in the form of factual allegations).  "In sum, for a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences [drawn] from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." Moss v. United States Secret Service, 572 F.3d 962, 969 (9th Cir. 2009), *quoting* Iqbal, 129 S. Ct. at 1949.

### D.    Eighth Amendment Violation Pleading Standards

The Eighth Amendment protects prisoners from inhumane conditions of confinement as well as from inhumane methods of punishment.  Morgan v. Morgensen, 465 F.3d 1041, 1045 (9th Cir. 2006). To make out a conditions of confinement claim, the identified deprivation must be extreme.  Hudson v. McMillian, 503 U.S. 1, 9 (1992).  A plaintiff must also allege facts sufficient to support the inference of deliberate indifference, that is, that the named prison officials knew of and disregarded a substantial risk of serious harm to the plaintiff "by failing to take reasonable measures to abate it."  Farmer v. Brennan, 511 U.S. 825, 847 (1994).

A prisoner's claim of inadequate medical care rises to the level of an Eighth Amendment violation only when (1) "the prison official deprived the prisoner of the 'minimal civilized measure of life's necessities,' " and (2) "the prison official 'acted with deliberate indifference in doing so.' " Toguchi v. Chung, 391 F.3d 1051, 1057 (9th Cir. 2004), *quoting* Hallett v. Morgan, 296 F.3d 732, 744 (9th Cir. 2002).   The standard thus encompasses an objective prong and a subjective prong.  First, the alleged deprivation must be objectively "sufficiently serious."  Farmer, 511 U.S. at 834.  Second, the prison official must act with a "sufficiently culpable state of mind," which entails more than mere negligence, but less than conduct undertaken for the very purpose of causing harm.  Id. at 837.

Under the subjective prong, even if a prison official should have been aware of a serious risk, but was not, then the official has not violated the Eighth Amendment, no matter how severe the risk. Farmer, 511 U.S. at 837 ("the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference") (citation

1   omitted).  Similarly, a medical professional's negligence in diagnosing or treating a medical condition,

2   even gross negligence, is insufficient to establish deliberate indifference to serious medical needs.  Wood

3   v. Housewright, 900 F.2d 1332, 1334 (9th Cir. 1990) ("An inmate's complaint of inadequate medical care

4   amounts to a constitutional violation if the inmate alleges 'acts or omissions sufficiently harmful to

5   evidence deliberate indifference to serious medical needs,' " not merely neglect), *quoting* Estelle v.

6   Gamble, 429 U.S. 97, 106 (1976) ("[m]edical malpractice does not become a constitutional violation

7   merely because the victim is a prisoner").

8          Once the serious need and the defendants' response to that need are established, the court can turn

9   to a determination of deliberate indifference.  McGuckin v. Smith, 974 F.2d 1050, 1060-61 (9th Cir.

10  1992), *overruled on other grounds by* WMX Techs., Inc. v. Miller, 104 F.3d 1133 (9th Cir. 1999) (*en

11  banc*) ("the more serious the medical needs of the prisoner, and the more unwarranted the defendant's

12  actions in light of those needs, the more likely it is that a plaintiff has established 'deliberate indifference'

13  on the part of the defendant").  Deliberate indifference may be shown "when prison officials deny, delay

14  or intentionally interfere with medical treatment, or it may be shown by the way in which prison

15  physicians provide medical care." Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006) (the prisoner must

16  show a purposeful act or failure to respond to his pain or serious medical need and resulting harm caused

17  by the indifference) (citation omitted).  Delay in medical treatment causes an Eighth Amendment

18  violation only if the delay "occurred to patients with problems so severe" that the failure to act quickly

19  would cause an obvious or excessive risk to the prisoner's health or safety.  Farmer, 511 U.S. at 834.

20         **E.      Dorsey Fails To State An Eighth Amendment Violation Claim**

21         Dorsey presents one claim for relief, predicated on Defendants' allegedly deliberate indifference

22  to his serious medical needs associated with his Valley Fever condition and based on alleged delay of

23  treatment.  (TAC ¶¶ 20-26.)   He identifies the challenged conduct as failure to provide a particular

24  medication and a transfer out of PVSP.  He contends that conduct has resulted in injury manifested by

25  "fatigue, weight loss, infections, and very severe pain," symptoms which have "significantly affected his

26  activities in prison each and every day."  (TAC ¶ 21.)  He summarily alleges Defendants "have acted

27  intentionally . . . and with knowledge of [his] suffering and the risk of further serious harm that could

28  result from their actions or refusal to act."  (TAC ¶ 22.)

1    In particular, Dorsey alleges as to defendant Kernan:

2        **As the Director [of the CDCR]** defendant Kernan is and has been
     responsible for promulgating, supervising the promulgation of,
3        implementing, supervising the implementation of, monitoring
     compliance with, supervising the monitoring of compliance with,
4        enforcing and/or **supervising the enforcement of policies and
     procedures** affecting the medical care of all inmates within the CDC.
5        In this position defendant Kernan is and has been **responsible for
     assuring that all inmates receive proper medical care** including proper
6        diagnosis and treatment.  At all times mentioned defendant Kernan was
     acting under color of state law, in the course and scope of his
7        employment, and is sued herein in his official and individual capacities.

8    (TAC ¶ 5 (emphasis added)).

9    With respect to defendant Tilton, Dorsey alleges:

10       [D]efendant Tilton is a properly trained correctional officer who has been
     **responsible [as Secretary of the CDCR] for the safety, security, and
11       over all well-being of all inmates at P.V.S.P.**  At all times mentioned
     defendant Tilton was acting under color of state law, in the course and
12       scope of her/his employment, and is sued in his official and individual
     capacities.

13   (TAC ¶ 9 (emphasis added).)

14   With respect to defendant Igbinosa, Dorsey alleges:

15
16       [Igbinosa] is a properly trained and licensed medical doctor who was
     **responsible for the medical care of all inmates at P.V.S.P.**  This
     included, but was not limited to, **the supervision, direction, and/or
17       proper training of all the medical staff at P.V.S.P.** in the delivery of
     health care services and the management of health care programs;
18       involvement in the determination of proper medical care for inmates,
     including, but  not limited to, having authority to order and approve
19       medical tests and treatments to be done; having authority to assure that
     inmates who are transferred to other institutions receive proper medical
20       care; having authority and responsibility for assuring the proper ordering
     and stocking of medical supplies; communication of medical needs to the
21       correctional custody staff; **and, generally, making sure that proper
     medical treatment is provided to all inmates**; [and] was **responsible
22       for assuring that P.V.S.P. medical staff**, and all other medical
     providers with whom the CDC contracted in providing medical care to
23       inmates at P.V.S.P., **provided proper medical care to inmates**, and that
     all such individuals knew and understood, and acted pursuant to CDC
24       policy.  At all times mentioned Felix Igbinosa was acting under color of
     state law, in the course and scope of his employment, and is sued herein
25       in his official and individual capacities.

26   (TAC ¶ 6 (emphasis added)); *see* West v. Atkins, 487 U.S. 42, 54 (1988) (physicians who contract with

27   prisons to provide medical services are acting under color of state law when treating inmates).

28       Dorsey names Warden James Yates in the caption of his TAC but does not refer to him in the

- 12 -                                    08cv0919

1    body of his pleading.  Absent factual allegations, no claim is stated upon which relief can be granted,

2    and the Motion is accordingly **GRANTED** as to defendant Yates on that basis.

3         "Vague and conclusory allegations of official participation in civil rights violations are not

4    sufficient to withstand a motion to dismiss."  Ivey v. Board of Regents, 673 F.2d 266, 268 (9th Cir.

5    1982).  Dorsey recites the Defendants were each "acting under color of state law," but omits factually

6    specific allegations involving any personal interaction between himself and any of them.  *See* Leer v.

7    Murphy, 844 F.2d 628, 633-34 (9th Cir. 1988) ("The prisoner must set forth specific facts as to each

8    individual defendant's deliberate indifference" and causal role in the alleged constitutional deprivation).

9    Under Section 1983, a "supervisor is only liable for the constitutional violations of his subordinates if

10   the supervisor participated in or directed the violations, or knew of the violations and failed to prevent

11   them," because there is "no respondeat superior liability under [§] 1983."  Taylor, 880 F.2d at 1045

12   (citations omitted); Monell, 436 U.S. at 691.

13        Dorsey's allegations against defendants Kernan, Tilton, and Igbinosa do not establish any of them

14   was personally aware of his medical needs.  He does not allege Dr. Igbinosa was himself a treating

15   physician. Even if Dorsey had alleged facts showing Igbinosa failed to treat him in the way he demands

16   (*i.e.*, a particular medication and transfer to another location), he would not make out a sustainable

17   Eighth Amendment claim against Igbinosa.  Differences of opinion about a course of treatment between

18   a physician and a patient, or even between physicians, are insufficient to satisfy the necessary element

19   of deliberate indifference.  Estelle, 429 U.S. at 104; *see* Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir.

20   1996) (liability for alleged constitutional violations associated with medical needs requires a showing

21   the defendant acted to "deny, delay, or intentionally interfere with medical treatment," in "conscious

22   disregard of an excessive rise to plaintiff's health"). Neither Kernan nor Tilton is identified as a medical

23   professional authorized to prescribe treatment, and neither is alleged to have had personal contact with

24   Dorsey.

25        Absent evidence of a particular departmental policy or custom Defendants made, "promulgated,

26   adopted, or ratified" causing a constitutional violation, no official-capacity liability can attach to these

27   supervisory defendants.  Thompson v. City of Los Angeles, 885 F.2d 1439, 1444 (9th Cir.1989); *see also*

28   Beck, 527 F.3d at 871.  Dorsey identifies no such policy or custom.  As noted in another case, "to the

extent that Plaintiff is attempting to pursue an Eighth Amendment claim for the mere fact that he was confined in a location where Valley Fever spores existed which caused him to contract Valley Fever, he is advised that no courts have held that exposure to Valley Fever spores presents an excessive risk to inmate health." King v. Avenal State Prison, 2009 WL 546212 *4 (E.D. Cal. Mar. 4, 2009); *see also* Tholmer v. Yates, 2009 WL 174162 * 3 (E. D. Cal. Jan. 26, 2009) ("To the extent Plaintiff seeks to raise an Eighth Amendment challenge to the general conditions of confinement at PVSP, Plaintiff fails to allege facts that indicate Defendants are responsible for the conditions of which Plaintiff complains," such as "acts or omissions of Defendants have caused an excessively high risk of contracting valley fever at PVSP").  Prisoners have no federal right to be housed in, or not housed in, any particular facility. *See* Meachum v. Fano, 427 U.S. 215, 225-27 (1976); Olim v. Wakinekona, 461 U.S. 238, 245-47 (1983); *see also* United States v. Brown, 59 F.3d 102, 105 (9th Cir. 1995 (*per curiam*).

   The TAC summarily alleges Defendants violated 42 U.S.C. § 1983 "because [their] conduct constitutes deliberate indifference to plaintiff's serious medical needs in violation of his Eighth Amendment right to be free from cruel and unusual punishment" entitling him to damages for "severe pain and suffering and emotional distress," past and future, as well as "special damages in the future in the form of medical expenses for treatment of his condition."  (TAC ¶¶ 23-25.)  His allegations lack factual support adequate to plausibly infer the personal liability of the named Defendants.  Iqbal, 129 S.Ct. at 1949.  Moreover, Dorsey has not alleged facts from which it could be found the treatment he received was "medically unacceptable under the circumstances" due to any of these Defendants' conscious disregard of an excessive risk to his health.  Toguchi, 391 F.3d at 1058.  Finally, he identifies no affirmative act or omission by any of them that can reasonably be construed as manifesting deliberate indifference to a known serious medical need.  *See* Twombly, 550 U.S. at 570.

   In summary, even if the treatment or its delay for Dorsey's Valley Fever and his continued housing at PVSP were sufficiently serious to satisfy the objective prong of an Eighth Amendment claim (*see* Wilson, 501 U.S. at 304; Hallett, 296 F.3d at 744), the TAC's factual allegations do not permit a plausible inference any of the named Defendants personally participated in the deprivation of his Eighth Amendment rights, knew of the alleged violations and failed to act to prevent them, or promulgated or "implemented a [particular] policy so deficient that the policy 'itself is a repudiation of constitutional

1   rights' and is 'the moving force of the constitutional violation.' " <u>Hansen v. Black</u>, 885 F.2d 642, 646 (9th

2   Cir. 1989); *see* <u>Taylor</u>, 880 F.2d at 1045.  He pleads no "more than an unadorned, the-defendant-

3   unlawfully-harmed-me accusation," divesting the claim of any "facial plausibility."  <u>Iqbal</u>, 129 S.Ct. at

4   1949 (2009); <u>Twombly</u>, 550 U.S. at 556, 570, 555.  Absent deliberate indifference on the part of the

5   named Defendants associated with his medical claims, no cognizable constitutional claim is stated.  *See*

6   <u>Balistreri</u>, 901 F.2d at 699.  Accordingly, the Court **GRANTS** Defendants' Rule 12(b)(6) Motion to

7   Dismiss the TAC for failure to state an Eighth Amendment claim upon which relief can be granted.

8   Consequently, the Court need not reach Defendants' alternative affirmative defense of qualified

9   immunity.  *See* <u>Saucier v. Katz</u>, 533 U.S. 194, 201 (2001) (if the court finds no constitutional violation,

10  it need not determine whether defendants are qualifiedly immune).  The Court further finds granting

11  Dorsey leave to amend would be futile.

12  **III.     CONCLUSION AND ORDER**

13          For all the foregoing reasons, the Court hereby:

14          1.      **GRANTS** Defendants' Motion To Dismiss Dorsey's Third Amended Complaint without

15  prejudice for failure to exhaust administrative remedies pursuant to 42 U.S.C. § 1997e(a);

16          2.      **GRANTS** Defendants' Rule 12(b)(6) Motion for failure to state a claim;

17          3.      **DENIES** Dorsey leave to amend, finding any further amendment would be futile;

18          4.      **CERTIFIES** that an IFP appeal of this Order would not be taken in good faith pursuant

19  to 28 U.S.C. § 1915(a)(3); and

20          5,      **INSTRUCTS** the Clerk of Court to close this file.

21          **IT IS SO ORDERED**.

22  DATED:  December 15, 2009

23

24                                              JOHN A. HOUSTON
                                                United States District Judge
25

26

27

28